Cite as 2020 Ark. App. 174

# ARKANSAS COURT OF APPEALS

DIVISION IV
No. CR-19-374

| | | |
|---|---|---|
| | | **Opinion Delivered:** March 11, 2020 |
| ANITA ROWTON | APPELLANT | APPEAL FROM THE LONOKE COUNTY CIRCUIT COURT [NOS. 43CR-13-496 & 43CR-18-305] |
| V. | | HONORABLE BARBARA ELMORE, JUDGE |
| STATE OF ARKANSAS | APPELLEE | REVERSED AND REMANDED IN PART; REVERSED AND DISMISSED IN PART; AFFIRMED IN PART |

## KENNETH S. HIXSON, Judge

Appellant Anita Rowton was serving probation in case no. 43CR13-496 (hereinafter referred to as CR13-496). While on probation, appellant was involved in a single-vehicle accident and was cited with driving while intoxicated (DWI), refusal to submit to a chemical test, and careless and prohibited driving. Appellant was convicted of all three offenses in a bench trial in the Lonoke County Circuit Court in case no. 43CR-18-305 (hereinafter referred to as CR18-305). Appellant was sentenced to an aggregate term of twelve months in the county jail. Immediately following the bench trial, appellant was tried and found guilty of violating the terms and conditions of her probation in CR13-496. The circuit court sentenced appellant to serve an aggregate term of eighteen months' imprisonment followed by eighteen months' suspended imposition of sentence (SIS). On appeal, appellant contends that there was insufficient evidence to convict her of DWI in CR18-305 and that

there was insufficient evidence that she violated the terms and conditions of her probation in CR13-496. In CR18-305, we reverse appellant's DWI conviction and remand. In CR13-496, we reverse and dismiss the circuit court's revocation as it pertains to the third-degree-escape and public-intoxication charges, and we affirm the circuit court's revocation as it pertains to the charges of breaking or entering and theft of property.[1]

I. *Relevant Facts*

A. CR-18-305

Around 9:50 a.m. on February 2, 2018, appellant's vehicle ran off the road when she was driving around a sharp curve. The front airbags deployed, and the vehicle was wedged on top of a tree stump in a row of trees along the side of the road. Appellant exited her vehicle and walked to the nearest residence for assistance. Shortly thereafter, a driver of another vehicle stopped to also provide assistance. Law enforcement subsequently arrived and observed appellant's behavior at the scene. The officer testified that appellant was generally disoriented, incoherent, and had slurred speech. Appellant was transported to the sheriff's department where she was given a Breathalyzer test. Appellant tested 0.00%. The officer then asked appellant to submit to a urinalysis, and appellant refused. Appellant was arrested and charged with DWI in violation of Arkansas Code Annotated section 5-65-103 (Repl. 2016), refusal to submit to a chemical test in violation of Arkansas Code Annotated section 5-65-205 (Supp. 2019), and careless and prohibited driving in violation of Arkansas

---

[1]This is the second time this case is before us. In *Rowton I*, we remanded to settle and supplement the record, and we ordered rebriefing after the record was settled and supplemented. *Rowton v. State*, 2019 Ark. App. 538. Pursuant to our opinion issued in *Rowton I*, the circuit court has filed amended sentencing orders, and the parties have filed their substituted briefs.

Code Annotated section 27-51-104 (Repl. 2010). After appellant was found guilty by the Lonoke County District Court, she appealed to the circuit court. The circuit court held a bench trial on December 5, 2018.

At the circuit court trial, Deputy Robbie McCain testified that he was dispatched to the scene of a single-vehicle accident, arriving around 9:50 a.m. Deputy McCain stated that when he arrived, he saw a white Audi in the ditch in the tree line stuck on top of a tree stump. Appellant was sitting in the vehicle on the passenger side with the door open. Other bystanders and first responders were standing around. Deputy McCain stated that he did not observe any skid marks on the road, which meant that the vehicle never slowed down before it left the roadway. Upon speaking with appellant, she appeared to be a little distraught and disoriented. Her speech was slurred; she was having trouble making coherent sentences; and her movements were swayed a little bit. She denied consuming any alcohol, and Deputy McCain did not notice any odor of intoxicants. Deputy McCain testified that, because it was cold and windy, he placed appellant in the rear seat of his patrol car to warm up. Later, when he returned to his patrol car, he smelled an odor of intoxicants emanating from appellant. Upon additional questioning, appellant told him that she was on prescription medications, including clonazepam, and had drunk a couple of Miller Lite beers the night before. Deputy McCain then conducted field-sobriety tests; however, appellant was unable to complete all of them due to previous knee surgeries. The State introduced into evidence the officer's dash-camera video. This video was played for the circuit court, and the State contended that it was evidence of appellant's intoxication. Deputy McCain testified that it appeared to him that appellant could not coherently understand what was

going on at any point in time. Deputy McCain testified that he arrested appellant for DWI based on her mannerisms, body language, the swaying, the slurred speech, the admittance of alcohol consumption the night before, and the prescriptions. After appellant was arrested and transported to the sheriff's department, she agreed to a Breathalyzer test. The result of that test was a 0.000, which meant that no alcohol registered on the test. Based on that result, Deputy McCain requested that appellant submit to a urinalysis. Deputy McCain testified that appellant refused and indicated that she was afraid that the test would show the prescription medications in her system.

Lisa Hankins testified that she lived near the scene of the accident and that appellant had walked up to her home after the accident. According to Ms. Hankins, appellant was cold and wet and appeared very disheveled and scattered. Appellant was acquainted with Ms. Hankins's brother-in-law through her daughter. Appellant asked Ms. Hankins to call her brother-in-law for help. Appellant specifically did not want Ms. Hankins to call anyone else. Ms. Hankins called her brother-in-law, but he did not answer the phone. Appellant left and returned to her vehicle, and Ms. Hankins subsequently called law enforcement.

Travis Beebe testified that he and his wife drove up on the scene of the accident and stopped to provide assistance. Mr. Beebe stated that appellant was sitting in the passenger seat and appeared to be going through the glove compartment. Mr. Beebe testified that appellant was disheveled, incoherent, rambling, and muddy. However, he did not think that she appeared to be off balance. Appellant asked Mr. Beebe if he could remove her car from the trees. Mr. Beebe replied that he could not remove the car and asked appellant if she wanted him to call 911. She refused his offer, but he ignored her and called 911.

4

The State rested its case, and appellant moved to dismiss her DWI charge. Appellant argued that the State failed to prove that she had been intoxicated. She argued that her Breathalyzer-test results showed that she did not have any alcohol in her system, and the State failed to show that she was under the influence of any other intoxicant. No testimony from a drug-recognition expert was introduced. The State responded that it was arguing that she was under the influence of her prescription medications and that the evidence showed she was under the influence of her medications to the point that she could not operate her vehicle. Appellant thereafter additionally argued that if the allegation was that she was under the influence of prescription medications, the State failed to introduce any evidence of the requisite culpable mental state under *Leeka v. State*, 2015 Ark. 183, 461 S.W.3d 331. The State disagreed, arguing that because her medications affected her ability to drive, she would have been acting recklessly. The circuit court denied the motion to dismiss, and appellant called her witnesses.

Appellant's daughter, Aleicha Rachelle Williams, testified that she saw her mother shortly before the accident. At that time, she did not think anything was wrong with appellant. Ms. Williams testified that she did not smell any alcohol on appellant during their visit.

Pharmacist Carl Andrew Holder testified that he manages the pharmacy where appellant fills her prescriptions. Pharmacist Holder explained that appellant had been a patient of his for two and a half to three years. Pharmacist Holder testified that appellant had been prescribed Suboxone and clonazepam, a long-acting benzodiazepine. He testified that appellant was taking clonazepam nightly as a sleep aid. Pharmacist Holder further

5

testified that at the time of the accident, appellant was past the adjustment period for the medications that she was prescribed. Under normal use, he expected that a person would have stabilized and not suffer any adverse effects from the medications in the morning.

Appellant's probation officer, Rodney Ford, testified that appellant visited him three days after her arrest, and he conducted a drug test. All of appellant's drug tests reflected negative results. Officer Ford further explained that although some trace amounts of amphetamine and alcohol were detected in her system, those amounts were below the baseline thresholds. Thus, the results of those tests were negative. Officer Ford additionally testified that appellant was not tested for benzodiazepines because she had a prescription for that medication.

At the conclusion of all the evidence, appellant renewed her motion to dismiss. She again argued that the State had failed to introduce any evidence that she was intoxicated or had anything in her system other than her prescribed medications. Moreover, she explained that Pharmacist Holder testified that she should not have had any intoxicating effects from those prescriptions. Finally, she argued that there had been no proof that she was using any intoxicant in a reckless manner. The State disagreed and argued that even though it was not required to prove the culpable mental state of recklessness, it had done so. The State argued that appellant had refused to submit to a urinalysis, which was evidence of consciousness of guilt. The State argued that she refused the test because she knew she was impaired and was afraid that the test would show multiple substances in her system.

The circuit court took a recess, and when it resumed, the circuit court announced that the State did not need to prove a culpable mental state, as DWI is a strict–liability

offense. Defense counsel disagreed, but the circuit court again expressed that it was certain that DWI is a strict-liability offense—regardless of whether the intoxicant was alcohol, a controlled substance, or a combination of the two. Thus, the circuit court denied the motion to dismiss, found appellant guilty, and stated the following:

> Now I'm going to take into consideration everything. I'm going to take into consideration what I saw on the video. And she was swaying. I -- I was beginning to sway with her. Okay? She was swaying. And she did have -- was slurred. And I just -- I don't think her motor skills and her judgment was up to par. I believe that those combinations of everything, if you take into combination everything -- her statement, her reactions, her rambling on, consistently rambling on, talking when other people were trying to tell her not to talk, her behavior indicated to me that she was intoxicated. So I'm finding her guilty.

In its November 13, 2019, amended sentencing order, the circuit court found appellant guilty of DWI-I and sentenced her to serve twelve months in the county jail; guilty of refusal to submit to a chemical test and sentenced her to three months in the county jail; and found appellant guilty of careless and prohibited driving but did not impose any additional incarceration. The circuit court ordered that all sentences be served concurrently for an aggregate term of twelve months in the county jail.

## B. CR–13–496

### 1. *The Hearing for the Violation of Conditions of Probation*

At the conclusion of the bench trial for CR18-305, the court took up the issue of appellant's alleged violations of probation. The probation records indicated that on April 7, 2014, appellant pleaded guilty in the Lonoke County Circuit Court in CR13-496 to breaking or entering in violation of Arkansas Code Annotated section 5-39-202 (Repl. 2013), theft of property in violation of Arkansas Code Annotated section 5–36–103(b)(3)(A) (Supp. 2019), third-degree escape in violation of Arkansas Code Annotated section 5-54-

7

112, and public intoxication in violation of Arkansas Code Annotated section 5-71-212. Appellant was placed on probation for seventy-two months for the breaking-or-entering and theft-of-property charges, twelve months for the third-degree-escape charge, and thirty days for the public-intoxication charge.

On February 16, 2018 (two weeks after the single-vehicle accident discussed above), the State filed a petition to revoke appellant's probation, alleging that appellant violated her terms and conditions of probation as follows:

1. Defendant failed to report on 5/17/17.

2. Defendant was arrested for Careless Driving, DWI 1st and Refusal to Submit to Chemical Test on 2/3/18.

3. Defendant tested positive for alcohol on 5/18/17.

4. Defendant was not truthful when she denied consuming alcohol on 5/18/17.

Officer Rodney Ford testified that he was appellant's probation officer. Officer Ford testified that on May 17, 2017, appellant failed to report as scheduled. Officer Ford called appellant and she reported the following day. One of the conditions of probation was that appellant was prohibited from drinking intoxicating or alcoholic beverages. Appellant told Officer Ford that she had not been drinking alcohol. Officer Ford subsequently performed a test, and she tested positive for alcohol. Moreover, appellant gave at least three different stories as to why she had missed the previous day's appointment. Officer Ford testified that on a subsequent probation visit, appellant confessed to drinking alcohol. Finally, Officer Ford testified that appellant reported her February 2, 2018, arrest to him for DWI, refusal to submit to chemical test, and careless and prohibited driving on Monday, February 5, 2018.

8

At the conclusion of the evidence, the circuit court found appellant in violation of the terms and conditions of her probation and stated the following:

> Well, she tested positive for the alcohol and she denied it, then she I don't know what happened but she did test positive, and she was arrested for the careless driving, the DWI, and the refusal, and she was found guilty of that in District Court, appealed it, and has been found guilty again and has a right to appeal that too. And she failed to report. Now I can see maybe the confusion on this failing to report, but I don't see any confusion on having alcohol in the middle of the day. I don't see that. *I believe that they've proved that on the petition to revoke that she violated the rules of probation.*

(Emphasis added.)

In its November 13, 2019, amended sentencing order, the circuit court sentenced appellant to serve eighteen months' imprisonment followed by eighteen months' SIS for the charges of breaking or entering and theft of property. The sentencing order additionally reflects that appellant was sentenced to serve twelve months' imprisonment for third-degree escape and one month's imprisonment for public intoxication. Thus, because the sentences were to be served concurrently, appellant was sentenced to serve an aggregate total of eighteen months' imprisonment followed by eighteen months' SIS.

## II. *Appeal Pertaining to CR18-305 - DWI*

Even though appellant was convicted of DWI, refusal to submit to a chemical test, and careless and prohibited driving, appellant appeals only the conviction for DWI. Appellant presents a twofold argument. First, she argues that her DWI conviction should be reversed and dismissed because the evidence was insufficient to prove that she was even intoxicated. This argument, however, lacks merit.

Second, appellant argues that her conviction should be reversed and dismissed because the circuit court failed to apply the correct culpable mental state. The State argues

9

that no culpable mental state was required but alternatively argues that we should still affirm on the basis that the circuit court reached the right result, albeit for the wrong reason. It explains that even if a culpable mental state was required, the circuit court could have concluded that the State presented sufficient evidence that appellant acted recklessly by driving while she was intoxicated. We agree with appellant that the circuit court applied the wrong culpable mental state, but we disagree with appellant that we must reverse and dismiss. Instead, we reverse and remand for the circuit court to apply the correct culpable mental state. *See Leeka, supra*; *Gray v. State*, 2019 Ark. App. 543, 590 S.W.3d 177; *French v. State*, 2018 Ark. App. 502, 563 S.W.3d 582.

The circuit court was required to apply the following culpable mental state in accordance with Arkansas Code Annotated section 5-2-203:

> (b) Except as provided in §§ 5-2-204(b) and (c), if the statute defining an offense does not prescribe a culpable mental state, a culpable mental state is nonetheless required and is established only if a person acts purposely, knowingly, or recklessly.

Ark. Code Ann. § 5-2-203(b). In *Leeka*, our supreme court held that the DWI statute requires a culpable mental state of purposely, knowingly, or recklessly. *Leeka, supra*. In response to *Leeka*, the legislature added subsection (c) to Arkansas Code Annotated section 5-65-103, which makes an "alcohol-related offense" a "strict liability offense." *Tackett v. State*, 2017 Ark. App. 271, at 4, 523 S.W.3d 360, 362. However, despite the State's allegation to the contrary on appeal, alcohol consumption was not an issue in this case. Appellant's Breathalyzer test indicated that she had no alcohol in her system. Thus, subsection (c) would not apply, and a culpable mental state of purposely, knowingly, or recklessly is required in accordance with both section 5-2-203(b) and *Leeka*.

10

Recklessly is defined as follows:

> (A) A person acts recklessly with respect to attendant circumstances or a result of his or her conduct when the person consciously disregards a substantial and unjustifiable risk that the attendant circumstances exist or the result will occur.

> (B) The risk must be of a nature and degree that disregard of the risk constitutes a gross deviation from the standard of care that a reasonable person would observe in the actor's situation[.]

Ark. Code Ann. § 5-2-202(3). This court has noted that a criminal defendant's intent or state of mind is seldom apparent. *Rose v. State*, 2018 Ark. App. 446, 558 S.W.3d 415. One's intent or purpose, being a state of mind, can seldom be positively known to others, so it ordinarily cannot be shown by direct evidence but may be inferred from the facts and circumstances. *Id*. Because intent cannot be proved by direct evidence, the fact-finder is allowed to draw on common knowledge and experience to infer it from the circumstances. *Id*. Because of the difficulty in ascertaining a defendant's intent or state of mind, a presumption exists that a person intends the natural and probable consequences of his or her acts. *Id*.

Here, it is clear from our record that the circuit court incorrectly held during the hearing on appellant's motion to dismiss that the applicable culpable mental state for non-alcohol-related offenses is strict liability, and it did not also make an alternative finding under the correct standard as the circuit court did in *Cordero v. State*, 2019 Ark. App. 484, 588 S.W.3d 369. Therefore, we cannot conclude that the circuit court, as the fact-finder in this case, would have concluded that appellant acted at least recklessly under the evidence of this case. Thus, we reverse appellant's DWI conviction and remand for the circuit court to consider the evidence of this case under the correct standard.

III. *Appeal Pertaining to CR13-496*

A. Jurisdictional Issues

In CR13-496, we must first decide whether the circuit court had jurisdiction to revoke appellant's probation for the third-degree-escape and public-intoxication charges. Whether a circuit court can revoke probation after the expiration of the probation period is an issue of jurisdiction. *Trif v. State*, 2016 Ark. App. 452, 503 S.W.3d 802. Although appellant did not raise a jurisdictional argument below or on appeal, whether a circuit court has jurisdiction to revoke probation is an argument that we may address for the first time on appeal. *Id.*

> A court may revoke a suspension or probation subsequent to the expiration of the period of suspension or probation if before expiration of the period:
>
> (1) The defendant is arrested for violation of suspension or probation;
>
> (2) A warrant is issued for the defendant's arrest for violation of suspension or probation;
>
> (3) A petition to revoke the defendant's suspension or probation has been filed if a warrant is issued for the defendant's arrest within thirty (30) days of the date of filing the petition; or
>
> (4) The defendant has been:
>
>> (A) Issued a citation in lieu of arrest under Rule 5 of the Arkansas Rules of Criminal Procedure for violation of suspension or probation; or
>>
>> (B) Served a summons under Rule 6 of the Arkansas Rules of Criminal Procedure for violation of suspension or probation.

Ark. Code Ann. § 16-93-308(f) (Supp. 2019).

Here, on April 7, 2014, appellant was placed on probation for seventy-two months for the breaking-or-entering and theft-of-property charges, twelve months for the third-

degree-escape charge, and thirty days for the public-intoxication charge. Thus, the circuit court lost jurisdiction to revoke appellant's probation for the third-degree-escape and public-intoxication charges upon the expiration of the probationary period. *Trif, supra.* As such, we must reverse and dismiss the circuit court's judgment as it pertains to those two charges.

### B. Sufficiency of the Revocation for the Remaining Charges

A challenge to the sufficiency of the evidence may be raised for the first time in an appeal of a revocation in the absence of a motion for a directed verdict or motion to dismiss. *See Barbee v. State*, 346 Ark. 185, 56 S.W.3d 370 (2001). In a revocation proceeding, the circuit court must find by a preponderance of the evidence that the defendant has inexcusably failed to comply with a condition of his or her suspension or probation, and on appellate review, we do not reverse the circuit court's decision unless it is clearly against the preponderance of the evidence. *Flemons v. State*, 2014 Ark. App. 131; Ark. Code Ann. § 16-93-308(d) (Supp. 2019). Because the burdens are different, evidence that is insufficient for a criminal conviction may be sufficient for a probation or suspended-sentence revocation. *Bradley v. State*, 347 Ark. 518, 65 S.W.3d 874 (2002). Since determination of a preponderance of the evidence turns on questions of credibility and weight to be given testimony, we defer to the circuit court's superior position. *Id.* Furthermore, the State need only prove that the appellant committed one violation of the conditions in order to revoke appellant's sentence. *Peals v. State*, 2015 Ark. App. 1, 453 S.W.3d 151.

We affirm the circuit court's revocation based on the fact that appellant tested positive for alcohol on May 18, 2017. Appellant's probation officer testified that she denied

13

consuming any alcohol at her May 18, 2017, appointment; yet, she tested positive for alcohol. The probation officer further testified that on a subsequent probation visit, appellant confessed to consuming alcohol. Appellant's conditions of probation specifically stated that appellant "must not drink or possess intoxicating or alcoholic beverages . . . ." Based on the probation officer's testimony, the State proved by a preponderance of the evidence that appellant had inexcusably failed to comply with a condition of her probation. As such, we affirm the circuit court's revocation of appellant's probation for the charges of breaking or entering and theft of property.

IV. *Conclusion*

In conclusion, we reverse appellant's DWI conviction in CR18–305 and remand. In CR13–496, we reverse and dismiss the circuit court's revocation as it pertains to the third-degree-escape and public-intoxication charges. Finally, regarding the charges of breaking or entering and theft of property, we affirm the circuit court's revocation.

Reversed and remanded in part; reversed and dismissed in part; affirmed in part.

WHITEAKER and MURPHY, JJ., agree.

*Robert M. "Robby" Golden*, for appellant.

*Leslie Rutledge*, Att'y Gen., by: *Jacob H. Jones*, Ass't Att'y Gen., for appellee.

14